

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable R. A. McElrath
County Auditor
Cooke County
Gainesville, Texas

Dear Sir:

Opinion No. O-4006
Re: Authority of a county to
participate in the United
States Government Food Stamp
Plan, and other questions
stated herein.

Your letter of September 17, 1941, requesting
an opinion of this department on the questions stated
therein reads in part as follows:

"The Commissioners' Court of Cooke County
in special session September 15th 1941 passed
an order by unanimous vote 'that County Judge
be authorized to enter into a contract with the
Federal Government to establish food stamp pro-
gram in Cooke County and to provide necessary
funds for setting up said program from COUNTY
FUNDS provided City of Gainesville agrees to
pay half of said expenses incurred.'

"The above quoted order appears in Volume
4, page 352, Commissioners' Court Docket of Cooke
County and was intended as preliminary to enter-
ing into a contract with the Surplus Marketing
Administration of the Federal Government for the
distribution of foods to relief clients in Cooke
County under the proposed stamp plan in lieu of
the present system of distributing commodity
foods through a commodity room.

"1. The setting up of a revolving fund of
from $7500.00 to $10000.00 out of PUBLIC FUNDS,
said funds to be used for the purchase of stamps

to be sold relief clients and used by these relief clients for the purchase of foods, the money received from the sale of stamps to be placed back into the fund for the purchase of more stamps, and so on.

"2. An agreement to meet all the expenses of operating the office for the sale of stamps, including the salary of cashier and assistant, cost of office equipment, utilities, rentals and other expenses, which expenses were estimated at from $250.00 to $300.00 per month.

"In the event the City of Gainesville agrees to pay one-half of all expenses incurred, including the setting up of the revolving fund, your opinion is desired as to whether, under the above mentioned circumstances, there is any authority for setting up out of the general fund of the county, the county's part of this so-called 'revolving fund' and for meeting the county's part of the additional expenses of operating the office for the sale of stamps, also out of the general fund in the face of the fact that the condition of the general fund is such that it will show an overdraft of approximately $12,000.00 at the end of the present year, December 31st, 1941, without taking into consideration the setting up of the revolving fund or the additional expense of operating the stamp sale office, and in view of the fact that neither of these items were provided for in the budget.

"If your answer to the above is that the items mentioned are a proper charge against the general fund of the county, your opinon is desired as to whether the cash for setting up the revolving fund and for meeting the additional expenses of operating the stamp sale office may be provided by the issuance and sale of warrants, or in any other manner, and if warrants should be issued, how a sinking fund may be set up for retiring such warrants.

"For the last three years Cooke County has sponsored what is termed a 'health unit", said unit being operated jointly by the United States Public Health Service, State Department of Health, and Cooke County. The last budget set up was for a total of $13,281.25 distributed as follows:

| | | |
|---|---|---|
| "State | $3600 00 | |
| Local (Cooke Co. & City of Gainesville) | 4431 25 | |
| U. S. P. H. S. (title 6) | 3000 00 | |
| U. S. P. H. S. (V. D.) | 1200 00 | |
| Other Agencies | 1050 00 | $13,281.25 |

"The division of the local part of the budget between the City of Gainesville and Cooke County was as follows:

| | | |
|---|---|---|
| "City of Gainesville | $1800 00 | |
| Cooke County | 2631 25 | $4431 25 |

"The expenditures by the County each month are as follows:

| | | |
|---|---|---|
| "Salary of Health Nurse | $100 00 | |
| Salary of Sanitarian | 50 00 | |
| Salary of Clerk | 25 00 | $175 00 |

"In addition to the above expenditures, there is an item in the county's part of the budget which is called a 'contingent fund', the amount of which is $531.25. The director of the local health unit claims the right to make purchases, and does make purchases each month, out of this contingent fund, without any further order from the Commissioners' Court or the County Auditor, claiming that the order of the Commissioners' Court setting up the fund is authority for him to make such purchases as he chooses and send bills to the Commissioners' Court for payment, and that the Auditor must approve such bills and the Commissioners' Court must pass them for payment.

"Your opinion is desired as to whether there is any authority for meeting the expenses of the county's part of operating the health

unit as described above with appropriations from the general fund of the county, and whether there is any authority for providing a contingent fund such as has been set up and for the disbursing of said contingent fund in themanner in which it is being done.

"Your further opinion is desired as to whether there is any authority for the payment of salaries of the following class of workers, and for rentals on the following described buildings, out of the general fund of the county:

"Stenographers or clerks for old age assistance office.

"Stenographers or clerks for local Texas State Employment office.

"Stenographers or clerks under the Public Welfare Act of 1941.

"Rental on building used as a W.P.A. Sewing room.

"Rental on building used as a Commodity Room.

"Rental on hall used as meeting place for the local Home Defense Guard.

"Rental on building used as A.A.A. office."

Article 2351-17, Vernon's Annotated Civil Statutes, (House Bill No. 201, Acts of the 47th Legislature, 1941, Regular Session) empowers the commissioners' court of each county of this State to create a revolving fund or funds and to make appropriations thereto out of the general revenue of said county to be used by said county in cooperation with the United States Department of Agriculture to aid and assist in carrying out the purposes and provisions of an Act of Congress of the United States pertaining to the distribution of commodities of persons in need of assistance, under the direction of the United States Department of Agriculture. When any county exercises the powers granted by the above mentioned statute, an issuing officer shall be appointed to carry out the provisions of the Act and to administer the funds appropriated for such purposes. The statute

sets forth the qualifications of the issuing officer and provides that his salary shall not exceed $200.00 per month and that cashiers and other assistants as may be authorized by the court may be employed. This statute also authorizes the commissioners' court of any county to cooperate with any incorporated city or town in such county on such conditions and requirements as may be promulgated by such commissioners' court.

You are advised that the county may legally participate in the United States Government Food Stamp Plan under the provisions of the above mentioned statute. The only fund out of which "stamps", as above mentioned, may be purchased, or a revolving fund set up, is the general fund of the county. Section 7, Article XI of the State Constitution, inhibits the creation of any kind of a "debt," as that word is defined in the case of McNeal v. City of Waco, 33 S. W. 322, by the Supreme Court of Texas, "unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund." (See. 7, Art. 11, State Constitution). The word "debt" is defined in the McNeal case, supra, as follows:

"We conclude that the word 'debt' as used in the constitutional provisions above quoted, means any pecuniary obligation imposed by contract, except such as were, at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the corporation."

This department has consistently held that a county cannot contract such a "debt" and issue either bonds or time warrants to pay the same out of the general fund of the county. This department has also consistently held that a county has no authority to borrow money from its depository or any other bank or person to meet casual deficiencies in its general fund although there will be sufficient money in said fund when current taxes are collected.

Although you state "the condition of the general fund is such that it will show an overdraft of approximately $12,000.00 at the end of the present year, December 31, 1941, without taking into consideration the setting up of the revolving fund or the additional expense of operating the stamp sale office . . ." it is not shown that by setting up the revolving fund and providing for the necessary operating expenses of said plan that the amounts so required would exceed the amount of current revenues reasonably contemplated by the county.  If the funds are available, the revolving fund and the necessary operating expenses can be set up out of the general fund, or if no funds are available and the amount required does not exceed the amount of current revenues reasonably expected or contemplated by the county, ordinary warrants may be issued for the same.

We are enclosing a copy of our Opinion No. 0-3440 which holds that the commissioners' court may pay the bond premium of the issuing officer under Article 2351-15, supra.

With reference to your question relative to the county "health unit" we are enclosing a copy of our Opinion No. 0-2281 for your information.  Article 4418-f, Vernon's Annotated Civil Statutes, provides in part, "the commissioners' court of any county shall have the authority to appropriate and expend money from the general revenues of its county for and in behalf of public health and sanitation within its county."

Article 1659, Vernon's Annotated Civil Statutes, among other things, provides:

"Supplies of every kind, road and bridge material, or any other material, for the use of said county, or any of its officers, departments, or institutions must be purchased on competitive bids, the contract to be awarded to the party who, in the judgment of the commissioners court, has submitted the lowest and best bid. . . In cases of emergency, purchases not in excess of one hundred and fifty dollars may be made upon requisition to be approved by the commissioners court, without advertising for competitive bids."

Article 1660, Vernon's Annotated Civil Statutes, among other things, provides that "no claims shall be allowed

or paid until it has been examined and approved by the county auditor."

The duties of the county auditor are further pre-scribed by Article 1661, Vernon's Annotated Civil Statutes, which read as follows:

"He shall not audit or approve any such claim unless it has been contracted as provided by law, nor any account for the purchase of sup-plies or materials for the use of said county or any of its officers, unless, in addition to other requirements of law, there is attached thereto a requisition signed by the officer or-dering same and approved by the county judge. Said requisition must be made out and signed and approved in triplicate by the said officers, the triplicate to remain with the officer desir-ing the purchase, the duplicate to be filed with the county auditor, and the original to be de-livered to the party from whom said purchase is to be made before any purchase shall be made. All warrants on the county treasurer, except warrants for jury service, must be countersigned by the county auditor."

Section 10, Article 2351, Vernon's Annotated Civil Statutes, provides each commissioners' court shall "audit and settle all accounts against the county and direct their payment."

We find no authority, either expressed or implied, authorizing the commissioners' court to set up a "contingent fund," as above mentioned, and in the absence of such authority, the commissioners' court cannot legally set up such fund. However, said court may appropriate and expend money from the general revenues of the county for and in behalf of public health and sanitation within the county as authorized by Arti-cle 4418-f, supra. Such expenditures to be made in compliance with the above mentioned statutes, and to be allowed and ap-proved by the commissioners' court and the county auditor, and in the event the county does not have a county auditor, the same to be passed upon, allowed, and approved by the commis-sioners' court.

We now consider your third question relative to the authority of the commissioners' court regarding the payments

of salaries of the class of workers named therein and for rentals on the buildings described, out of the general fund of the county. The commissioners' court is not authorized to pay rental on a building used as an office for the A.A.A. This question was decided in our Opinion No. O-3876, a copy of which is enclosed. The commissioners' court is authorized to pay the rental on a building used as a meeting place for the local Home Defense Guard as provided by Article 5891a, Vernon's Annotated Civil Statutes. The commissioners' court is legally authorized to pay the rental on a building used as a W.P.A. Sewing Room and on a building used as a Commodity Room. See our Conference Opinion No. 3099, a copy of which is enclosed herewith. The question, whether the commissioners' court has authority to appropriate and expend county funds for the purpose of paying the salaries of stenographers or clerks for a "local Texas State Employment Office," "stenographers or clerks under the Public WelfareAct of 1941" and "stenographers or clerks for Old Age Assistance Office" is now before this department, which is presented in another opinion request and when answered we will be glad to send you a copy of the same if you still desire an answer to your questions regarding the same.

Trusting the foregoing answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED OCT 18, 1941    By

Grover Sellers /s/               Ardell Williams

FIRST ASSISTANT                 Assistant

ATTORNEY GENERAL

AW:LM

ENCLOSURES